UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VANDA PHARMACEUTICALS, INC.,

*Plaintiff*,

v.

FOOD AND DRUG ADMINISTRATION,

*Defendant*.

Civil Action No. 22-0938 (CRC)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the U.S. Food and Drug Administration ("FDA"), respectfully moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed a request under the Freedom of Information Act ("FOIA"), seeking the clinical and statistical reviews (the "Reviews") of its pending Supplemental New Drug Application. Because these Reviews are covered by Exemption 5's deliberative process privilege of the FOIA, FDA properly denied Plaintiff's FOIA request. As detailed in the accompanying memorandum of law, supporting declarations, and statement of undisputed material facts, FDA has satisfied its obligations with respect to Plaintiff's FOIA request. Accordingly, the Court should grant summary judgment in favor of FDA.

Dated:  July 1, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN HUDAK
Chief, Civil Division

By:      */s/ T. Anthony Quinn*
T. ANTHONY QUINN
Assistant United States Attorney
D.C. Bar No. 415213
United States Attorney's Office
Civil Division
601 D Street, NW
Washington, D.C. 20530
(202) 252-7558
Tony.Quinn2@usdoj.gov

*Counsel for Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Acting Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 273-4477
Danli.Song@fda.hhs.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VANDA PHARMACEUTICALS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, <br><br> *Defendant.* | Civil Action No. 22-0938 (CRC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**FDA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Vanda Pharmaceuticals, Inc., brought this Freedom of Information Act ("FOIA") action against the U.S. Food and Drug Administration ("FDA"), seeking the clinical and statistical reviews ("the Reviews") of its Supplemental New Drug Application ("Application"). As supported by this memorandum and accompanying declarations,[1] FDA properly withheld the Reviews under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the Agency's implementing regulations at 45 C.F.R. § 5.31(e), FDA's implementing regulation at 21 C.F.R. § 20.62, and 5 U.S.C. § 552(a)(8). Specifically, the Reviews are protected from disclosure under the deliberative process privilege because they are both predecisional and deliberative, and it is reasonably foreseeable that their disclosure would cause harm to FDA's Application decisionmaking process. Plaintiff's Application remains pending with FDA's Center for Drug Evaluation and Research ("CDER"),

---

[1] FDA's motion for summary judgment is accompanied by three declarations: (1) a declaration from Sarah Kotler, Director of the Division of Freedom of Information in FDA's Office of the Executive Secretariat ("Kotler Decl."); (2) a declaration from Howard R. Philips, Director of the Division of Information Disclosure Policy in FDA's Center for Drug Evaluation and Research ("Philips Decl."); and (3) a declaration from Dr. Tiffany R. Farchione, Director of the Division of Psychiatry in FDA's Office of New Drugs in the Center for Drug Evaluation and Research ("Farchione Decl.").

and the Reviews consist of opinions and discussions generated by CDER staff across multiple disciplines during the regular Application review process. The disclosure of the Reviews could have a chilling effect on staff deliberations and lead to public confusion regarding an unapproved indication for a drug already available to the public for other uses. The Court should therefore grant summary judgment in favor of FDA.

## BACKGROUND

### I.  Plaintiff's Supplemental New Drug Application

Under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. §§ 301 *et seq.*, pharmaceutical companies seeking to distribute drugs into interstate commerce must first obtain FDA approval by filing a new drug application. *See* 21 U.S.C. § 355(a), (c). To obtain approval, drug sponsors must provide, among other things, extensive scientific clinical data demonstrating the safety and effectiveness of the drug. *See id.* § 355(b). In accordance with section 506A of the Act, 21 U.S.C. § 356A, and 21 C.F.R. § 314.70, if the sponsor wants to make a change to an approved new drug application, such as adding a new indication (or use) for the drug on its labeling, the sponsor must file a supplemental drug application. *See* FDA, *Guidance for Industry: Changes to an Approved NDA or ANDA*, at 24, https://www.fda.gov/media/71846/download.

If there are deficiencies in the application, those may be communicated to the sponsor in the form of a complete response letter. *See* 21 C.F.R. § 314.110; *see also* Farchione Decl. ¶ 9. A complete response letter describes remaining deficiencies in the application, communicates steps the sponsor can take to resolve these issues, and provides additional opportunities for a sponsor to discuss these issues with the Agency (such as requesting a Post-Action meeting or formal dispute resolution with the Agency). Farchione Decl. ¶¶ 9-10. A complete response letter is not a final

rejection of the application, but an interim step in FDA's consideration of the application.  *Nostrum Pharms., LLC v. FDA*, 35 F.4th 820, 825–26 (D.C. Cir. 2022).

Plaintiff submitted a supplementalApplication to CDER, seeking to add an indication for jet lag disorder to its drug tasimelteon (marketed as Hetlioz).  *See* Complaint, ECF No.1 at ¶ 6; *see also* Farchione Decl. ¶ 11.  Following its typical Application review process, CDER's Division of Psychiatry assigned an interdisciplinary review team to review the Application and set out their opinions and recommendations in memoranda that were compiled in a Multi-Disciplinary Review, which includes clinical and statistical reviews.  Farchione Decl. ¶¶ 6, 11. On August 16, 2019, CDER's Review Team sent Plaintiff a complete response letter describing application deficiencies and stating that the Application could not be approved in its present form.  *Id.* ¶ 12.  After the issuance of the complete response letter, Plaintiff met with the Review Team in a Post-Action meeting to further discuss how to address the identified deficiencies. *Id*. ¶ 13.

## II.     **Plaintiff's FOIA Request**

On December 2, 2019, Plaintiff submitted a FOIA request to FDA's Division of Freedom of Information ("FDA's FOIA Office"), seeking the clinical[2] and statistical reviews of its Application.  *See* Kotler Decl. ¶ 11. FDA's FOIA Office assigned the request FOIA Request No. 2019-11592 and sent Plaintiff an email acknowledging receipt of the request.  *Id.* ¶ 12.  FDA's FOIA Office then assigned the request to the Division of Information of Disclosure Policy within CDER because the requested records relate to a drug application regulated by CDER.  *Id.* ¶ 13; *see also* Philips Decl. ¶¶ 6-7.

---

[2]      Plaintiff's original FOIA request used the term "medical review" to refer to the clinical review.  For the purposes of consistency with FDA's previous filings and typical usage, this summary judgment motion and accompanying filings uses the term "clinical review."

On January 15, 2020, FDA denied Plaintiff's FOIA request, explaining that the requested Reviews are protected from disclosure under FOIA Exemption 5 because they fall under the deliberative process privilege.  *See* Kotler Decl. ¶ 14; Philips Decl. ¶¶ 18–19.  Plaintiff then administratively appealed FDA's denial of the FOIA request.  *See* Kotler Decl. ¶ 15.  And in May 2021, FDA's Office of the Executive Secretariat upheld the denial of Plaintiff's FOIA request, stating that the Reviews were properly withheld.  *See id.* ¶ 16.

On April 6, 2022, Plaintiff filed the present action.  The only issue on summary judgment is whether FDA properly withheld the Reviews under FOIA Exemption 5—specifically, whether the Reviews are both predecisional and deliberative within the meaning of the deliberative process privilege.

**ARGUMENT**

**I.    Legal Standards for Summary Judgment in FOIA Actions**

The standard of review of agency action in FOIA cases is de novo.  *See DiBacco v. Dep't of Army*, 926 F.3d 827, 832 (D.C. Cir. 2019).  While the FOIA requires disclosure of certain agency records, it recognizes "that public disclosure is not always in the public interest" and enumerates several categories of documents exempt from disclosure.  *CIA v. Sims*, 471 U.S. 159, 166–67 (1985); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (FOIA exemptions are "intended to have meaningful reach and application").

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v.*

*Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The defendant agency holds the burden of proof to justify its decision to withhold any documents. *DiBacco*, 926 F.3d at 834.  There should be "considerable deference" to an agency's judgment regarding what constitutes part of its "give-and-take" by which a decision is made, because the agency is best situated to understand the confidentiality required to prevent injury to the quality of its decisions. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975), and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)).  An agency is entitled to summary judgment if it "proves that it has fully discharged its obligations" under the FOIA.  *Reliant Energy Power Generation, Inc. v. Fed. Energy Regulatory Comm'n*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

In support, the agency may rely on declarations that "describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  The justification for invoking a FOIA exemption need only be "logical" or "plausible."  *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## II.   The Deliberative Process Privilege (FOIA Exemption 5)

FOIA Exemption 5 protects from public disclosure "inter-agency and intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5); *see also* 21 C.F.R. § 20.62.  It protects all communications that

are normally privileged in the civil discovery context. *Sears*, 421 U.S. at 149. This includes the deliberative process privilege, which is designed to protect agencies' decision-making processes. *Id.* at 151; *see also* Philips Decl. ¶ 11.

The deliberative process privilege protects communications that would expose the deliberative processes of the agency if disclosed. *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68–71 (D.C. Cir. 1974). The deliberative process privilege may be invoked when an inter-agency or intra-agency document is: (1) "predecisional," meaning it was prepared to assist an agency decisionmaker in arriving at a final decision, *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (agency recommendations were predecisional because they were created before the adoption of an agency policy); and (2) "deliberative," meaning it is a part of the deliberative process and makes recommendations or expresses opinions on legal or policy matters, *Vaughn*, 523 F.2d at 1143–44.

The FOIA also requires that agencies may only withhold a document under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law[.]" FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)). The policy interests underlying the deliberative process privilege include the encouragement of open discussions on policy matters between subordinates and superiors, protection against premature disclosure of proposed policies before final adoption, and prevention of public confusion that could result from premature disclosure. *See, e.g.*, *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021); *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. Dep't of Just.*, 591 F.2d 753, 772–73 (D.C. Cir. 1978) (en banc).

**III.    FDA Properly Withheld the Clinical and Statistical Reviews of Plaintiff's**
<u>**Unapproved Drug Application under the Deliberative Process Privilege**</u>

FDA properly withheld the Reviews at issue pursuant to Exemption 5 based on the deliberative process privilege.  As a threshold matter, the Reviews satisfy Exemption 5's initial requirement that the document's source be a government agency, and Plaintiff does not question FDA's satisfaction of that requirement. *See* Complaint, ECF No. 1. Thus, FDA's withholding of the Reviews was proper if: (1) they are predecisional; (2) they are deliberative; and (3) FDA reasonably foresees that their disclosure would harm an interest protected by Exemption 5.  As explained below, the Reviews satisfy these requirements.

**A.    The Reviews Are Predecisional**

First, the Reviews are predecisional.  A document is predecisional if it is "generated before the adoption of an agency policy."  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp.*, 617 F.2d at 866).  The issue turns not on whether an agency can necessarily point to a final decision but whether the document contributes to a larger process of agency decisionmaking.  *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (upholding the use of the deliberative process privilege where a withheld memorandum contributed to an agency's decisionmaking process regarding how to respond to critics of proposed amendments to FOIA).  An agency can expressly choose to adopt or incorporate by reference the document in a final decision.  *See, e.g.*, *Sears*, 421 U.S. at 161; *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014).  However, the burden is on the requestor to demonstrate express adoption or incorporation.  *Elec. Frontier Found.*, 739 F.3d at 11.

Here, the Reviews are part of a Multi-Discipline Review document consisting of opinions, recommendations, and policy discussions shared among CDER staff from different divisions on the Application Review Team.  Farchione Decl. ¶¶ 8, 15. Each section of the Multi-Discipline

Review is authored by multiple reviewers from each relevant division, sharing their subject-specific comments with the other divisions. *Id*. Their recommendations are generated as part of a regular and continuing process of agency decisionmaking regarding the deficiencies in Plaintiff's pending Application and how they might be corrected for approval. *Id*. ¶ 15. Indeed, Plaintiff's Application was pending at the time the Reviews were drafted and remains pending with FDA, as CDER has not withdrawn the application. *Id*. ¶ 14. Given that there has been no final decision on Plaintiff's Application, no agency policy has yet been adopted. Thus, the Reviews of the Application were clearly "generated before the adoption of an agency policy." *See Jud. Watch*, 449 F.3d at 151.

The issuance of the complete response letter does not alter this conclusion—instead, its issuance after the drafting of the Reviews further clarifies the intermediary status of Vanda's Application. The role of the complete response letter is to describe deficiencies identified in an application or data and recommend actions to take to put the application in a favorable position for approval. *See* 21 C.F.R. § 314.110(a). Significantly, the D.C. Circuit recently held that a complete response letter is not an "order" that refuses approval of a drug application but rather, an "interim step in FDA's consideration of an application." *Nostrum Pharms., LLC v. FDA*, 35 F.4th 820, 825 (D.C. Cir. 2022) (holding that the court lacks jurisdiction to review a CRL because it is not a final rejection of a drug application). The court stated that "FDA's regulations are explicit that complete response letters simply afford applicants the opportunity to provide additional information" before a final agency decision on the application. *Id*. The court explained that the complete response letter is meant to inform sponsors of changes that must be made before an application can be approved, without making any implications about the ultimate decision that will be made on the application. *Id*. at 825–26. Notably, a complete response letter "opens multiple doors for further

processing of an application," as the sponsor may choose to revise its application with the suggested recommendations, seek reconsideration at the division level, request an opportunity for a hearing under 21 C.F.R. § 314.110(b)(3), or withdraw its application without prejudice under 21 C.F.R. § 314.110(b)(2).  *Id.* at 826.

Indeed, after receiving the  complete response letter, Plaintiff chose to open some of these doors.  As Plaintiff noted on its website, Plaintiff met with FDA in a Post-Action meeting to discuss the CRL and stated that it was determining its next steps to obtain approval of the Application. Farchione Decl. ¶ 13.  In Plaintiff's news release regarding the complete response letter, Plaintiff indicated an understanding that its Application remained pending, noting its "plans for continued engagement with the FDA on this matter."  *Id.* ¶ 12.  Plaintiff also entered the Formal Dispute Resolution process with FDA.  *Id.* ¶ 13.

Plaintiff's Application has not been withdrawn.  *Id.* ¶ 14.  Plaintiff can still choose to revise its Application with the suggested changes, *see id.*, request a hearing under 21 C.F.R. § 314.110(b)(3), or withdraw its application without prejudice under 21 C.F.R. § 314.110(b)(2). As Plaintiff's actions reflect, FDA's regulations provide for numerous actions an applicant may take after receiving a complete response letter CRL.  *See* 21 C.F.R. § 314.110(b).  Thus, this status of Plaintiff's Application only confirms the predecisional nature of the Reviews.

Moreover, even if a complete response letter constituted the adoption of an agency policy, it did not adopt or incorporate the Reviews, either expressly or implicitly.  Kotler Decl. ¶ 16.  Under FDA regulations, FDA performs a complete review of the data submitted in a drug application and identifies deficiencies before issuing a complete response letter CRL, but the complete response letter does not adopt or incorporate internal memoranda or communications.  *See* 21 C.F.R. § 314.110(a)(1)–(2).  Here, the  complete response letter's reference to other documents, including

the minutes of three meetings between Plaintiff and FDA and two letters, shows that FDA makes clear when a document is incorporated by reference.  *See* Compl., ECF No. 1-5 (Ex. E at 5).

Thus, because the Reviews were clearly prepared to assist in FDA's decisionmaking during the Application review process but are not part of a final decision on the Application, they are predecisional for purposes of the deliberative process privilege.

### B.      The Reviews Are Deliberative

Second, the Reviews are deliberative.  To be deliberative, the document must reflect the "give-and-take of the consultative process" by assessing the merits of a viewpoint or articulating the process used to reach a decision.  *Coastal States*, 617 F.2d at 867 (holding that the deliberative process privilege covers documents that reflect the opinions of the writer rather than the policy of the agency).  Like the "predecisional" prong discussed above, the issue centers on the role of the document within an agency process—whether its communication is a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  *Vaughn*, 523 F.2d at 1143–44.  Courts must examine the context in which the information is used, the role the information plays in the context, and the harm its release would do to the decisionmaking process.  *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1123–24 (D.C. Cir. 1989).

Here, the Reviews fall squarely within the type of deliberations contemplated by the privilege.  Unlike the complete response letter, which focuses on the next steps the applicant can take to address deficiencies, the Reviews contain comprehensive evaluations and opinions gathered throughout the review process. Farchione Decl. ¶¶ 15, 17. These opinions regarding the application's study design and data are gathered from staff of different disciplines, who each provide recommendations relevant to their subject areas.  *Id*. ¶ 15.  The Reviews were prepared as part of the regular agency process to determine whether Plaintiff's application should be approved.

*Id*. ¶¶ 8, 11, 15.  And they were prepared by staff who did not know what the ultimate decision on the application would be, as the application was and remains pending with FDA. *Id*. ¶ 14.

Indeed, in a FOIA suit against the National Institutes of Health ("NIH"), this court held that documents similarly created as part of a peer review process to evaluate the scientific merits of an application were deliberative.  *Weinstein v. Dep't of Health & Hum. Servs.*, 977 F. Supp. 41, 43 (D.D.C. 1997).  In *Weinstein*, the documents sought were summary evaluations of applications for research grants, including evaluations of applicants' approaches to research problems and the adequacy of their experimental design.  *Id*.  Groups of scientists ("Scientific Review Groups" or "SRGs") then set forth their recommendations regarding whether applications should be granted.  *Id*.  Like the Reviews here, the Scientific Review Groups' evaluations and recommendations did not constitute a final decision on each application or hold independent decisionmaking authority.  *Id*.

This Court noted that these summary evaluations "reflect the collective views of [Scientific Review Groups] on a wide variety of issues relevant to the feasibility and value of research proposals submitted to the NIH" and that the submitted declaration stated that public disclosure of reviewer comments would discourage candid evaluations of applications.  *Id*. at 44.  Thus, this court held that the opinions expressed in the Scientific Review Group evaluations were deliberative for purposes of Exemption 5 and that their disclosure would adversely affect NIH's decisionmaking process.  *Id*.  Given the similar nature of the requested Reviews and concerns regarding the discouragement of candid evaluations, *see* Farchione Decl. ¶ 18, this court should hold the same here.

As a final matter, to the extent the Reviews contain factual information in the form of data or scientific information, those portions still fall under the deliberative process privilege because

they are inextricably intertwined with the opinions and recommendations evaluating them. Philips Decl. ¶ 20; Farchione Decl. ¶ 16; *see also* 5 U.S.C. § 552(a)(8)(A)(ii).  Although purely factual information is not generally protected by the deliberative process privilege because it does not expose staff opinions or deliberations, the line between factual and deliberative information is not straightforward—factual information must therefore be examined in the context in which it is used and in light of the purpose underlying the privilege.  *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc); *see Brannum v. Dominguez*, 377 F. Supp. 3d 75, 83 (D.D.C. 2005) (holding that factual material still fell within Exemption 5 because they were used by agency personnel to develop recommendations to a decisionmaker and thus implicated the policy purposes of Exemption 5).  Factual information can be withheld as deliberative if it is so intertwined with deliberative material that its disclosure would also harm the agency's deliberations.  *Elec. Frontier Found.*, 739 F.3d at 12 (finding that an entire document, including factual material, "'reflects the full and frank exchange of ideas'" so that factual portions "'could not be released without harming the deliberative processes of the government'" (citations omitted)).

C.   **FDA Reasonably Foresees That Disclosure of the Reviews Would Harm the Agency's Process of Evaluating Supplemental New Drug Applications and Undermine the Agency's Protection of the Public Health**

FDA reasonably foresees that disclosure of the Reviews would harm an interest protected by Exemption 5—that is, the Agency's internal decisionmaking processes for evaluating Applications and the prevention of public confusion regarding the drug at issue.  The deliberative process privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options" and "an understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Jud. Watch, Inc. v. Dep't of Def.,* 847 F.3d 735, 739 (D.C. Cir. 2017).  The

privilege also "avoids confusion from premature disclosure of ideas that are not—or not yet—final policy, and misimpressions from 'dissemination of documents suggesting reasons and rationales' not ultimately relied on." *Id.* (quoting *Coastal States*, 617 F.2d at 866).

Here, in opining on and analyzing Plaintiff's Application for purposes of creating the Reviews, the Review Team members would not anticipate that their comments would be used for anything but internal deliberations, given that FDA does not publish review documents associated with unapproved or pending drug applications to its website. Philips Decl. ¶¶ 13–15. Thus, the Reviews implicate the deliberative process privilege's central purpose of preventing harm to the quality of an agency's decisionmaking process. Disclosing such Reviews would have a chilling effect on scientific and technical staff discussions and the development of a comprehensive record of how a consensus opinion was reached. Farchione Decl. ¶ 18. These sensitive discussions are critical to ensuring that drugs are marketed to the public for safe and effective uses. *Id.* Unhampered communication is especially important where staff come from different scientific disciplines and must engage in complex interdisciplinary discussions. *Id.* The danger of a chilling effect on this Review Team's deliberations is particularly concerning given that Plaintiff's Application remains pending and future deliberations with the Review Team may be necessary. *Id.*

Moreover, the disclosure of clinical and statistical reviews in the context of an unapproved Application raises important public health and safety concerns. Farchione Decl. ¶ 19. Hetlioz/tasimelteon is available on the market to treat non-24-hour sleep-wake disorder, but medical practitioners can prescribe the drug for uses outside the labeled indication. *Id.* Thus, disclosing these reviews to drug sponsors could result in sponsors publishing the FDA's predecisional opinions and analyses alongside the sponsors' own commentary and analyses, which

may confuse consumers and medical practitioners and, as a result, adversely affect the protection of public health. *Id.*

Indeed, an agency's interest in withholding technical information or data may be especially strong in the scientific context, where intellectual risk-taking is critical to evolution and progress. *See Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984). Here, the entire Multi-Discipline Review containing the requested Reviews reflects a comprehensive, interdisciplinary exchange of ideas whose release could be particularly harmful in the context of a pending Application.

## CONCLUSION

For the above reasons, FDA respectfully requests that the Court grant summary judgment in its favor.

Dated: July 1, 2022                    Respectfully submitted,

                                       MATTHEW M. GRAVES
                                       United States Attorney
                                       D.C. Bar No. 481052

                                       BRIAN HUDAK
                                       Chief, Civil Division

                    By:    */s/ T. Anthony Quinn*
                           T. ANTHONY QUINN
                           Assistant United States Attorney
                           D.C. Bar No. 415213
                           United States Attorney's Office
                           Civil Division
                           601 D Street, NW
                           Washington, D.C. 20530
                           (202) 252-7558
                           Tony.Quinn2@usdoj.gov

                           *Counsel for Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Acting Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 273-4477
Danli.Song@fda.hhs.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| VANDA PHARMACEUTICALS, INC., |
| *Plaintiff*, |
| v. |
| FOOD AND DRUG ADMINISTRATION, |
| *Defendant*. |

Civ. A. No. 22-0938 (CRC)

**FDA'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 7(h), the U.S. Food and Drug Administration ("FDA") submits this statement of undisputed material facts. The facts discussed below concern a Freedom of Information Act ("FOIA") request submitted by Plaintiff to FDA.

1.      On October 16, 2018, Plaintiff submitted Supplemental New Drug Application ("sNDA") 205677/S-004 to FDA, seeking to add a jet lag indication for its drug tasimelteon (marketed as "Hetlioz"). FDA approved Hetlioz to treat non-24-hour sleep-wake disorder in 2014.

2.      On August 16, 2019, FDA sent Plaintiff a complete response letter ("CRL") stating that sNDA 205677/S-004 could not be approved in its present form.

3.      On December 2, 2019, Plaintiff submitted a FOIA request to FDA, seeking the "[t]he Medical Review and Statistical Review that support the decision of the Center for Drug Evaluation and Research (CDER) on New Drug Application 205677/S-004" (the "Reviews").

4.      On December 5, 2019, FDA's Division of Freedom of Information ("DFOI") assigned Plaintiff's FOIA request FOIA No. 2019-11592 and sent Plaintiff an email acknowledging receipt of the FOIA request.

5.      On January 15, 2020, DFOI denied Plaintiff's FOIA request, explaining that the requested Reviews are exempt from disclosure under Exemption 5 of the FOIA statute (5 U.S.C. § 552(b)(5)), HHS's implementing regulations at 45 C.F.R. § 5.31(e), and FDA's implementing regulations at 21 C.F.R. § 20.62, because they fall within the deliberative process privilege.

6.      On January 28, 2020, Plaintiff appealed FDA's denial of the FOIA request to the United States Department of Health and Human Services ("HHS").

7.      On January 30, 2020, HHS acknowledged receipt of the FOIA appeal and assigned the case FOIA Appeal No. 2020-00069-A-PHS.

8.      On May 13, 2021, FDA's Office of the Executive Secretariat upheld the denial of Plaintiff's FOIA request based on the deliberative process privilege.

9.      On April 6, 2022, Plaintiff filed a Complaint in this court, initiating this present action to compel FDA to produce the records requested in its FOIA request.

July 1, 2022                              Respectfully submitted,

                                         MATTHEW M. GRAVES
                                         United States Attorney
                                         D.C. Bar No. 481052

                                         BRIAN HUDAK
                                         Chief, Civil Division

                         By:      /s/ T. Anthony Quinn
                                  T. ANTHONY QUINN
                                  Assistant United States Attorney
                                  D.C. Bar No. 415213
                                  United States Attorney's Office
                                  Civil Division
                                  601 D Street, NW
                                  Washington, D.C. 20530
                                  (202) 252-7558
                                  Tony.Quinn2@usdoj.gov

                                  *Counsel for Defendant*

2

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Acting Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 273-4477
Danli.Song@fda.hhs.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VANDA PHARMACEUTICALS, INC.,

    *Plaintiff*,

                v.

FOOD AND DRUG ADMINISTRATION,

    *Defendant*.

Civil Action No. 22-0938 (CRC)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion for Summary Judgment, the entire record herein, and for good cause shown, it is hereby

ORDERED that Defendant's Motion is GRANTED, and it is further

ORDERED that summary judgment is granted in the Food and Drug Administration's favor on Plaintiff's claims in this action.  This is a final appealable order.

It is SO ORDERED this \_\_\_\_\_ day of _____, 2022.

_____
CHRIUSTOPHER R. COOPER
United States District Judge

4