**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VANDA PHARMACEUTICALS, INC.,

*Plaintiff*,

v.

FOOD AND DRUG ADMINISTRATION,

*Defendant*.

Civ. A. No. 22-0938 (CRC)

**DEFENDANT'S OPPOSITION TO PLANTIFF'S**
**MOTION FOR LEAVE TO CONDUCT DISCOVERY AND**
**TO HOLD SUMMARY JUDGMENT BRIEFING IN ABEYANCE**

Defendant, the U.S. Food and Drug Administration ("FDA"), by and through undersigned

counsel, respectfully submits this opposition to the motion for leave to conduct discovery and to

hold summary judgment briefing in abeyance (ECF No. 10, hereafter, "Motion") filed by Vanda

Pharmaceuticals, Inc. ("Vanda" or "Plaintiff").  Unless explicitly stated, FDA does not concede

any arguments in Plaintiff's Motion and maintains all previous statements in FDA's motion for

summary judgment (ECF No. 8).

**PRELIMINARY STATEMENT**

This is a Freedom of Information Act ("FOIA") case about two documents, and Plaintiff

seeks discovery about two statements made in a declaration filed with FDA's motion for summary

judgment regarding those documents.[1]  Plaintiff submitted a FOIA request dated December 2,

2019, seeking the clinical and statistical reviews ("the Reviews") of its supplemental New Drug

Application ("sNDA") for its drug tasimelteon and brought this action when FDA denied the

---

[1]     Despite what Plaintiff's voluminous scientific and technical attachments might imply, this
case is not about whether Plaintiff's drug tasimelteon is safe or effective.

request.  In accordance with the parties' agreed-upon briefing schedule, FDA filed its motion for summary judgment, accompanying memorandum, and three declarations on July 1, 2022.  ECF No. 8.  FDA explained that the Reviews fall under FOIA Exemption 5's deliberative process privilege, *see* 5 U.S.C. § 552(b)(5), because they are predecisional and deliberative, and withholding the Reviews was proper because it was reasonably foreseeable that disclosure of the Reviews would harm a policy interest underlying the privilege, *see* 5 U.S.C. § 552(a)(8)(A)(i)(l). *Id.*  Plaintiff's sNDA remains pending with FDA's Center for Drug Evaluation and Research ("CDER"), and the Reviews consist of opinions and discussions generated by CDER staff across multiple disciplines during the review process.  As FDA explained, the disclosure of the Reviews could have a chilling effect on staff deliberations and lead to public confusion regarding an unapproved indication for a drug already available to the public for other uses.  *Id.*  FDA's brief included a declaration by Dr. Tiffany Farchione, who explained the general sNDA review process and how these types of reviews are used by CDER during that process.  ECF No. 8-3 (hereafter "Farchione Decl.").

Plaintiff's cross-motion for summary judgment was due on August 1, 2022.  ECF No. 7. On July 29, 2022, rather than respond to FDA's summary judgment package in a cross-motion, Plaintiff informed the Court that it instead planned to move for leave to seek discovery and to hold the summary judgment briefing schedule in abeyance.  ECF No. 9.  The next business day, Plaintiff filed the Motion, accompanied by, among other things, declarations by Dr. Jonathan Jarow, ECF No. 10-3, and Dr. Daniel Combs, ECF No. 10-4.

Plaintiff's Motion does not dispute that the requested Reviews are predecisional and deliberative.  *See id.*  Instead, the only alleged dispute concerns the final two statements made in Dr. Farchione's declaration, ECF No. 8-3 at ¶¶ 18–19, which noted that this type of disclosure

could have a chilling effect on the agency's deliberative process ("the chilling effect statement") and raise public health concerns ("the public health statement").

Plaintiff seeks to depose Dr. Farchione about these two statements. ECF No. 10-1 at 22. Plaintiff attempts to elevate this case above a run-of-the-mill FOIA dispute, making much of the fact that these statements note possible future harms. *See id.* at 2. But such statements regarding future harm are eminently ordinary in the FOIA context. Indeed, since the FOIA Improvement Act of 2016, Pub. L. No. 114–185, § 2(1)(D), 130 Stat. 538, 539, an agency must withhold information if it "reasonably foresees" harm protected by a FOIA exemption. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I) ("[a]n agency shall withhold information under this section only if the agency *reasonably foresees* that disclosure would harm an interest protected by an exemption described in subsection (b)") (emphasis added).

The summary judgment briefing schedule proposed by the parties and imposed by this Court is a proper and adequate vehicle for Plaintiff to oppose FDA's arguments. Contrary to Plaintiff's contention, detouring to a deposition over these two statements before Plaintiff has filed its summary judgement brief is not an "efficient path for this litigation," *see* ECF No. 10-1 at 2, particularly when Plaintiff's only attempt to show that Federal Rule of Civil Procedure 56(d) has been satisfied is to merely restate the standard. *See id.* at 21. For these and the below reasons, the Court should deny Plaintiff's Motion and allow summary judgment briefing in this case to proceed.

## ARGUMENT

Allowing Plaintiff to conduct a deposition in a FOIA case before it files any summary judgment briefing is inappropriate for two reasons. First, discovery is generally disfavored in the FOIA context, and the limited exceptions to this rule do not apply to this run-of-the-mill FOIA case. And second, discovery regarding the chilling effect and public health statements is unnecessary and would not aid this Court in resolving the case at this juncture. To be clear,

Plaintiff does not challenge the deliberative or predecisional nature of the Reviews. Plaintiff seeks discovery to challenge the stated consequences if the deliberative information were released.

## I.    DISCOVERY IS GENERALLY INAPPROPRIATE IN THE FOIA CONTEXT, WITH LIMITED EXCEPTIONS THAT DO NOT APPLY HERE

This Court and the D.C. Circuit have repeatedly held that "discovery is rarely appropriate in FOIA cases." *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1024 (D.C. Cir. 2021); *see also, e.g., Bonfilio v. OSHA*, 320 F. Supp. 3d 152, 157 (D.D.C. 2018) ("Discovery is strongly disfavored in FOIA cases"); *Thomas v. HHS, FDA*, 587 F. Supp. 2d 114, 115 n.1 (D.D.C. 2008) ("[D]iscovery is an extraordinary procedure in a FOIA action"); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions").[2]   Indeed, Plaintiff itself acknowledges this established rule, conceding that discovery is "the exception, not the rule, in FOIA cases."  *See* ECF No. 10-1 at 8.

Based on this well-settled precedent, this Court has denied discovery in another FOIA dispute in which a defendant agency had filed a sworn declaration stating that the withheld documents fell within the deliberative process privilege.  *Freedom Watch, Inc. v. NSA*, 220 F. Supp. 3d 40, 46 (D.D.C. 2016).  There, after both parties had filed summary judgment briefing and the plaintiff sought discovery, this Court found that the agency's declaration, submitted in good faith, supported invoking the deliberative process privilege and, therefore, discovery was unwarranted.  *Id.*  The Court noted that agency declarations "are afforded 'a presumption of good

---

[2]    Indeed, this Court's Local Civil Rule ("Local Rule") 26.2(a) specifically exempts FOIA actions from the initial disclosure requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(1).  *See* LCvR 26.2(a)(9).  Similarly, Local Rule 16.3(b) exempts FOIA actions from the duty to meet and confer, noting that FOIA actions were included on the list of exempt cases "because they are actions that typically do not require discovery or actions in which an initial disclosure requirement would not make sense."  LCvR 16.3(b) (comment).

faith'" and that "courts can award summary judgment solely based on agency affidavits and declarations that are 'relatively detailed and non-conclusory.'" *Id.* at 44–45.

Discovery in a FOIA case "is generally permitted only upon a showing that the agency acted in bad faith." *Bonfilio*, 320 F. Supp. 3d at 157 (denying discovery and distinguishing the plaintiff's case from cases where there was "record evidence that the agency intentionally destroyed responsive records" after submission of a FOIA request). Indeed, this Court has only permitted discovery in the FOIA context in extraordinary circumstances, when "a FOIA plaintiff 'raises a sufficient question as to the agency's good faith in searching for or processing documents' or 'agency affidavits do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized.'" *See Accuracy in Media, Inc. v. DOD,* Civ. A. No. 14-1589 (EGS/DAR), 2020 WL 9439354, at *12 (D.D.C. Aug. 27, 2020) (alteration in original) (quoting *Cole v. Rochford,* 285 F. Supp. 3d 73, 76 (D.D.C. 2018)). Thus, in those limited situations, discovery would be used to examine processing matters such as the scope of the agency's search for a document, its indexing and classification procedures, and similar issues. *Id.*

None of those circumstances are present here. Plaintiff does not challenge the adequacy of FDA's record search, FDA's identification and retrieval procedures, or FDA's good faith in processing the FOIA request. *See Gawker Media, LLC v. Dep't of State,* 266 F. Supp. 3d 152, 157 (D.D.C. 2017) (explaining that "limited discovery may be appropriate in certain circumstances, such as when 'it appears an agency has not undertaken an adequate search for responsive documents,' or 'when a plaintiff raises a sufficient question as to the agency's good faith in processing documents in response to a FOIA request.") (internal citations omitted)). Nor does Plaintiff argue that FDA's declarations do not provide enough information to challenge the procedures used in processing its FOIA request. *See Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C.

Cir. 1980) (permitting discovery in a FOIA case where the agency affidavits did not state which files were searched or by who and did not indicate any systematic approach to locating documents).

Instead, Plaintiff argues only that a factual dispute exists regarding two statements in Dr. Farchione's declaration, which have nothing to do with the *processing* of the FOIA request itself. ECF No. 10-1 at 14. Rather than support its demand for discovery, the FOIA cases that Plaintiff relies on merely highlight the wide berth between the rare FOIA matter where discovery has been permitted and run-of-the-mill cases, such as the instant case.

First, in *Citizens for Resp. & Ethics in Washington v. DOJ*, No. CIV. 05-2078(EGS), 2006 WL 1518964, at *3 (D.D.C. June 1, 2006), the Court determined that discovery was warranted because the plaintiff had sufficiently raised a question regarding bad faith on the part of the agency in processing plaintiff's two FOIA requests. Like the cases previously discussed, this case centered on factual disputes involving the agency's system for processing FOIA requests. Moreover, the Court permitted discovery only after a full round of briefing from both parties and a motions hearing left unanswered questions about the document searches and the reason for a lengthy delay despite the agency's claim that the request was given expedited processing. *Id*. at *2–*3.

Likewise, in *Cole v. Copan*, 2021 WL 6049871, at *7 (D.D.C. 2021), the "disputed facts" on which the plaintiff sought discovery concerned the adequacy of a document search. The plaintiff argued that the agency's processing showed bad faith because the agency initially failed to identify hundreds of thousands of documents, failed to conduct a search of those documents once their existence was disclosed, and falsely claimed that the hundreds of thousands of pages contained no responsive records. *Id*. at *11. The Court determined that "this is the rare case" warranting discovery rather than supplemental declarations, noting the agency's repeatedly

inconsistent representations regarding its document searches, failures to explain them "despite this Court's clear expressions of concern," and lengthy delay spanning three years before disclosing responsive records. *Id*. at *12. Similarly, the factual dispute in *Scudder v. CIA*, 25 F. Supp. 3d 19, 22 (D.D.C. 2014), centered on a processing issue and bad faith allegations, and thus lends no support to Plaintiff's request for discovery here.

Plaintiff spends the remainder of its "factual dispute" argument discussing a case where the alleged factual dispute concerned whether documents disclosing employees' potential conflicts of interest should be deemed "confidential" under FOIA Exemption 4. ECF No. 10-1 at 15–17 (citing *Washington Post Co. v. HHS*, 865 F.2d 320 (D.C. Cir. 1989)).[3]  In *Washington Post*, the FOIA dispute had already been through multiple rounds of briefing before the district and appellate courts, as well as two remands from the D.C. Circuit to the district court. 865 F.2d at 322–23. The sole remaining issue on appeal was whether the documents were "confidential" under Exemption 4, which turned on the extent to which the government's ability to obtain information was impaired and the importance of the information versus the public's interest in disclosure of the documents. *Id.* at 324. On summary judgment, the district court found that the extent of government impairment and importance of the information outweighed the public's interest in disclosure. *Id*. On appeal, the D.C. Circuit found that summary judgment was inappropriate because a genuine issue of material fact remained regarding the central question of whether the impairment to the government outweighed the public's interest in disclosure enough to place the documents within Exemption 4. *Id*. at 325.

---

[3]    Defendant notes that the analysis in *Washington Post* relied on the legal precepts announced in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974). However, *National Parks* was overturned by the Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (June 24, 2019).

Unlike Plaintiff's alleged factual dispute, the *Washington Post* parties' factual dispute did not involve assessing the reasonableness of foreseeability of harm—an additional requirement for withholding documents that fall under a FOIA exemption that had not yet been added to the FOIA.[4] This distinction is important because the reasonably-foreseeable-harm evaluation cannot be neatly folded into the same category of "predictive facts" as the impairment/confidentiality evaluation can be. For the former, the Court need only determine whether the harm is "*reasonably* foreseeable." *See* 5 U.S.C. § 552(a)(8)(A)(i)(I) (emphasis added). For the latter, the Court must engage in a factual *balancing* inquiry, weighing the extent of impairment and importance of the information against the public's interest in disclosure. *Washington Post*, 865 F.2d at 323–24.[5] Thus, the necessary inquiries are different.

Moreover, Plaintiff incorrectly states that the D.C. Circuit suggested that adversarial proceedings are often necessary in FOIA cases involving "predictive facts." *See* ECF No. 10-1 at 10. Not so. The D.C. Circuit explained that a factual inquiry into impairment, while predictive, nonetheless requires a district court to examine and weigh pieces of evidence and draw cumulative inferences to assess what is "most likely" to happen in the future. 865 F.2d at 326. In *Washington*

---

[4]    Indeed, the case was decided 27 years before the reasonable-foreseeability-of-harm requirement was codified in the FOIA Improvement Act of 2016. *See* S. Rep. No. 114-4 (2015).

[5]    The other cases on which Plaintiff relies that cite *Washington Post* are similarly unhelpful because they do not concern requests for discovery regarding FOIA's reasonable foreseeability of harm.

In one case, after both parties had completed summary judgment briefing, there continued to be a dispute over whether the documents fell within Exemption 4. *See In Def. of Animals v. USDA*, 501 F. Supp. 2d 1, 5 (D.D.C. 2007) (summary judgment was improper because of contradictions in the record over whether disclosure would allow a company's competitors to reverse engineer proprietary information).

Another case involved a claim that the agency had engaged in a bad faith search for the documents. *See Asarco, Inc. v. EPA*, No. CIV.A.08-1332EGSJMF, 2009 WL 1138830, at *1 (D.D.C. Apr. 28, 2009). The court denied the plaintiff's request for discovery because he failed to show bad faith and that discovery was necessary for resolving the dispute. *Id.* at *2.

*Post*, the district court's mistake was cutting off the parties' ability to present evidence based solely on the "inherently speculative" nature of the impairment issue because, as the Court explained, determining the likelihood of impairment still required sufficient factual evidence. *Id.*

Finally, in remanding the case back to the district court "to enable both sides to address and contest the issue of impairment," the *Washington Post* Court did not opine on whether formal discovery was necessary or whether additional supplemental declarations or briefing could resolve the issue.[6]  And after the *Washington Post* Court's 1989 decision, decades of caselaw (examples of which are cited above) firmly establish that discovery is generally disfavored in the FOIA context.

Notably, Plaintiff's claimed factual dispute here does not challenge the question of whether the Reviews are predecisional and deliberative under Exemption 5.  No matter how "hotly" or "vigorously" Plaintiff states that it opposes the chilling effect and public health statements (*see* ECF No. 10-1 at 6, 11), these two statements are about reasonably foreseeable harm, not about whether the Reviews fall under Exemption 5.  If the Reviews are predecisional and deliberative, they fall under Exemption 5, period.  *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 368–69 (D.C. Cir. 2021) (explaining that the agency's declarations established that the requested documents were "predecisional" because they preceded a new policy and "deliberative" because they reflected internal recommendations about the policy, and that "provides a sufficient basis for sustaining the government's invocation of Exemption 5").  If the Court determines that the Reviews fall under a FOIA exemption, the Court must then evaluate whether the agency

---

[6]      The D.C. Circuit noted that "[e]ven in this case, the parties may become convinced that a full-scale battle of experts on the issue of impairment would not be in either side's interest.  If that is so, they could submit the case for decision on the basis of a stipulated evidentiary record." *Id.* at 326.

reasonably foresees that disclosure would harm an interest protected by the exemption to justify its withholding. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). The Court's evaluation of whether the Reviews are covered by the deliberative process privilege is thus "independent" from its evaluation of whether there is a reasonable foreseeability of harm. *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 58 (D.D.C. 2021) (citing *Reporters Comm. for Freedom of the Press*, 3 F.4th at 369). Contrary to Plaintiff's assertions, the question of harm is not a "threshold" issue in this case, but an additional step in determining whether, when an exemption applies to a document, the agency can reasonably foresee that disclosure would harm an interest protected by that exemption.

This is not an extraordinary FOIA case. This case concerns two discrete documents, which FDA withheld under the most commonly litigated FOIA exemption, Exemption 5. *See* Patrick Birkinshaw, *Freedom of Information: The Law, the Practice and the Ideal*, 466–67 (4th ed. 2010). FDA conferred with Plaintiff in good faith and filed its motion for summary judgment first, explaining why Exemption 5 applies to the Reviews and providing context for why the agency reasonably foresees harm in their disclosure. Now, Plaintiff seeks to elevate this case into one necessitating discovery at the outset, instead of challenging FDA's motion directly in an opposition motion (which FDA could then reply to with additional explanations and, if necessary, supplemental declarations). None of the cases cited by Plaintiff change the fact that Plaintiff's request for discovery at this juncture is what is extraordinary, not Dr. Farchione's statements.

## II.   DISCOVERY IS UNNECESSARY AND WOULD NOT AID THE COURT IN RESOLVING THIS CASE

A deposition regarding the chilling effect and public health statements would be unnecessary and unhelpful to the Court in resolving the case at this juncture. The summary judgment schedule imposed by the Court is the appropriate vehicle for Plaintiff to make its arguments against FDA's position—indeed, despite Plaintiff's repeated protests that it is unable to

set forth arguments against the two statements at issue without discovery, it does exactly that in its discovery motion, making it unclear why Plaintiff cannot make those arguments in a cross-motion/opposition to FDA's summary judgment motion.  Proceeding with, rather than pausing, the summary judgment briefing schedule is the most efficient path for the Court to determine whether FDA has demonstrated that the Reviews fall under the deliberative process privilege and if so, whether FDA reasonably foresees that their disclosure would harm an interest protected by that privilege.  FDA maintains that it has supported both these arguments in its opening summary judgment motion, ECF No. 8, and need not re-litigate those issues here.

Nevertheless, further context regarding the foreseeable harm contemplated by the deliberative process privilege may clarify why Plaintiff's criticisms of FDA's statements are unfounded.  As discussed in FDA's summary judgment motion, the policy interests underlying the deliberative process privilege include encouraging open discussions on policy matters between subordinates and superiors, protecting against premature disclosure of proposed policies before final adoption, and preventing public confusion that could result from premature disclosure.  *See* ECF No. 8 at 6.  The privilege is based on a "commonsense notion" that agencies craft better rules when employees can engage in rigorous deliberation without the threat of it becoming public.  *Id*. at 12.  As the Philips declaration explained, FDA does not publish review documents unless and until a drug application is approved and only affirmatively publishes review documents for approved new drug applications ("NDAs"), not approved sNDAs.  *Id*. at 15 (citing Philips Decl. ¶¶ 13–15).

An agency can demonstrate reasonably foreseeable harm in the context of the deliberative process privilege if its declarations "specifically focus[ ] on 'the information at issue' in the [records] under review" and "conclude[] that disclosure of that information 'would' chill future

internal discussions." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). In *Machado Amadis*, the Department of State, citing to an agency affidavit, explained that disclosure of the information at issue "would severely hamper the efficient day-to-day workings of the Administrative Appeals Staff attorneys, who would no longer feel free to candidly discuss their ideas, strategies, and recommendations" in the requested type of document.   Brief for Appellees (filed October 22, 2019), 40–41, *Machado Amadis v. Dep't of State*, Appeal No. 19-5088 (D.C. Cir.) (citing Joint Appendix at 272).   The D.C. Circuit held that the agency "reasonably foresaw that disclosure would harm an interest protected by the deliberative-process privilege" based on the agency's conclusion to that effect, its description of the deliberative process, and the policy purpose behind the privilege, which is based on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery." *Machado Amadis*, 971 F.3d at 371.

Here, as in *Machado Amadis*, FDA's chilling effect statement focuses on the information at issue in the Reviews and reasonably anticipates that disclosure of the Reviews would chill future deliberations among CDER staff, adequately discussing the particular sensitivity of the information in the Reviews and the role they play in the sNDA review process. *See* ECF No. 8 (citing Farchione Decl. ¶¶ 15–18); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021) (discussing *Machado Amadis* and the difference between a perfunctory statement and a statement that explains the sensitivity of a type of information or the role that information plays in a decisonmaking process).   As explained in FDA's summary judgment motion, the Reviews contain detailed opinions and evaluations authored by staff from multiple scientific disciplines about whether the sNDA is supported by the data.   *Id*.   And FDA explained that protecting the exchange of these ideas is particularly sensitive in the context of a pending (i.e., not

yet approved) sNDA on which CDER and Plaintiff continue to engage in discussions and feedback. *Id*. at ¶ 12.

Plaintiff states that discovery is warranted "in the absence of any explanation from Dr. Farchione of how or why [disclosure of the Reviews would chill the deliberative process]."  But the chilling effect statement here falls squarely within the type of statements that the D.C. Circuit accepted in *Machado Amadis* because "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Machado Amadis*, 971 F.3d at 371 (ellipsis in original) (quoting *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975)).  Arguing otherwise contradicts the "obvious realization" about human experience that led to the passage of the privilege.  *See Klamath*, 532 U.S. at 8.  Thus, contrary to Plaintiff's assertion, the chilling effect statement is, in fact, the type of "prosaic" FOIA issue "for which discovery is routinely denied."  *See* ECF No. 10-1 at 11.

Plaintiff attempts to muddy the import of the chilling effect statement by inviting the Court to wade into the weeds of events that could lead to similar reviews being released in varying contexts outside of the unapproved sNDA at issue here—reviews for approved NDAs, reviews for approved sNDAs, reviews for pending sNDAs that might later be approved through further engagement with FDA or a successful appeal, and reviews necessary to an Administrative Procedure Act challenge.  *Id*. at 13–16.  But sampling the universe of paths by which reviews for different types of applications could eventually be released says little about what the reviewers here would anticipate being made public, and even less about FDA's contention that withholding these Reviews protects the quality of agency decisionmaking as contemplated by Exemption 5.

Plaintiff also does not demonstrate why discovery is warranted on the public health

statement.  For one, this statement is unnecessary to resolving summary judgment because FDA's chilling effect argument alone demonstrates reasonably foreseeable harm.  *See Machado Amadis*, 971 F.3d at 371.  The public health statement, however, provides additional context for FDA's differing treatment of reviews from approved drug applications versus reviews from unapproved drug applications and explains the "particular sensitivity" of reviews in an unapproved sNDA.[7]

Nor is the public health statement "extremely bold."  *See* ECF No. 10-1 at 20.  FDA's summary judgment motion explains that a drug at issue in an unapproved sNDA (unlike an unapproved NDA) is available on the market because it is approved by FDA for a different use. ECF No. 8 at 13–14; Farchione Decl. ¶ 19.  FDA did not suggest that the drug sponsor would use the Reviews to illegally market, promote, or advertise tasimelteon in violation of the Federal Food, Drug, and Cosmetic Act or FDA regulations.  *See id*.  But contrary to Plaintiff's assertions, more information is not always better.  Increasing "the mix" of information, as Plaintiff puts it (ECF No. 10-1 at 18), does not necessarily assist consumers and health professionals, particularly when the "mix" may not include entire documents and could include, for example, excerpts of documents

---

[7]       When a drug application is approved, FDA communicates safety, adverse event, and efficacy information to the public through the approved label.  *See* https://www.fda.gov/about-fda/oncology-center-excellence/how-do-i-use-prescription-drug-labeling#:~:text=FDA%2DApproved%20Patient%20Labeling&text=A%20Medication%20Guide%20must%20be,adverse%20reactions%20or%20medication%20errors.

> Patient labeling may be physically attached or provided separately from the USPI and contains information in lay language that can help patients use a drug safely and effectively. Types of FDA-approved patient labeling include Patient Package Inserts (PPIs), Medication Guides (MGs), and Instructions for Use (IFUs). A Medication Guide must be provided to the patient whenever the drug is dispensed. FDA-approved patient labeling is important to help patients mitigate and avoid serious adverse reactions or medication errors.

Where an sNDA has not been approved by FDA, there is limited utility in posting only the technical/scientific information about the drug, because the public lacks access to an approved label communicating safety, adverse event, and efficacy information regarding use of the drug for the unapproved indication.

out of context.[8]  And even when a drug is safe, the information available to the public about that

drug is a legitimate public health consideration.[9]

Additionally, Plaintiff fails to show that pausing summary judgment is warranted under

Rule 56(d).  Plaintiff argues that it cannot respond to ¶¶ 18–19 of the Farchione Declaration

without discovery because the basis for these assertions is "known only to Dr. Farchione" and that

the information sought is discoverable.  ECF No. 10-1 at 21 (citing *Convertino v. DOJ*, 684 F.3d

93 at 99–100 (D.C. Cir. 2012)).  But the declaration itself contains the basis for these statements,

namely Dr. Farchione's experience as a supervisor in CDER, familiarity with the sNDA review

process and the Reviews at issue, and personal knowledge.  Farchione Decl. ¶ 3.  This basis

satisfies the reasonably-foreseeable-harm standard, which does not require evidentiary proof

beyond the assessment of agency officials positioned to opine on the question.  *See Machado*

---

[8]     Importantly, if Plaintiff were to prevail in this litigation (which it should not for the reasons
set forth in FDA's motion for summary judgment), FDA could only release the Reviews to
Plaintiff, not to the public at large.  If another member of the public were to request the Reviews,
FDA would assert FOIA Exemption 4, in addition to Exemption 5, to withhold the documents.
This is because as part of an unapproved sNDA, the Reviews contain Vanda's confidential
commercial information that FDA may not release publicly under FOIA Exemption 4 and the
agency's regulations.  *See* 21 C.F.R. §§ 20.61(c) ("[d]ata and information submitted or divulged
to the Food and Drug Administration which fall within the definitions of a trade secret or
confidential commercial or financial information are not available for public disclosure"); *see also*
21 C.F.R. § 20.21(a) ("Any record of the Food and Drug Administration that is disclosed in an
authorized manner to any member of the public is available for disclosure to all members of the
public, except that: [d]ata and information subject to the exemptions established in § 20.61 for
trade secrets and confidential commercial or financial information . . . shall be disclosed only to
the persons for the protection of whom these exemptions exist.").  Thus, Vanda would control any
public dissemination of the Reviews, in whole or part.

[9]     Plaintiff makes several additional assertions about prescribing decisions, tasimelteon's
safety profile, and scientific literature/data that has been published about tasimelteon, which are
irrelevant to the issue of whether discovery regarding the public health statement is necessary in
this FOIA case.  *See* ECF No. 10-1 at 19–20.  However, it is worth noting that Plaintiff's statement
about a published manuscript authored by Plaintiff's Vice President that "result[ed] from" data
presented to FDA does not undermine the public health statement.  *See id.* at 18.  That publication
has little to do with the Reviews, which contain FDA's own extensive and internal deliberations
regarding that data.

*Amadis*, 971 F.3d at 371.

Even on the rare occasion when an agency's declarations are found insufficient (and Dr. Farchione's is not), the longstanding practice of courts in this Circuit is to request that the agency supplement its supporting declarations. *Isiwele v. HHS*, 85 F. Supp. 3d 337, 344 (D.D.C. 2015); *see, e.g., Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 23 (D.D.C. 2019) ("Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits."); *Jarvik v. CIA,* 741 F. Supp. 2d 106, 122 (D.D.C. 2010) (same); *see also Beltranena v. Clinton,* 770 F. Supp. 175, 187 (D.D.C. 2011) (denying requests for discovery and instead ordering agency to supplement its affidavits to establish that it conducted adequate searches). Indeed, the D.C. Circuit cautioned against granting discovery in FOIA matters even where an agency's affidavits are insufficient to carry the agency's burden under FOIA. *See Pavement Coatings*, 995 F.3d at 1024. The Court explained that "the preferred approach, if possible, is to resolve the lawsuit without discovery and by summary judgment. [Consequently,] [i]f the District Court believes that it can resolve [a FOIA] case for one side or the other with supplemental affidavits and further summary judgment briefing, it should do so." *Id.*

Moreover, plaintiffs in FOIA cases are not entitled to discovery in hopes of elaborating on and further verifying affidavit testimony. *Broaddrick v. Exec. Off. of President*, 139 F. Supp. 2d 55, 63 (D.D.C. 2001). Rather, in opposing a motion for summary judgment, the plaintiff must "state concrete[ly] why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [the agency's] summary judgment motion." *Id.* Here, Plaintiff has not explained what kind of "proof" it could seek in discovery beyond the agency's explanation regarding the harms of disclosure foreseeable through Dr. Farchione's experience and familiarity with the nature of the drug application review process (both generally in CDER and specifically

in this sNDA).  Thus, Plaintiff fails to show that it can satisfy the requirements to pause summary judgment under Rule 56(d).[10]

Finally, Plaintiff's concern that summary judgment cannot be granted if a genuine dispute over issues of material fact remains after both parties file dueling briefs and affidavits is premature. Only FDA has filed its motion for summary judgment and three additional opportunities to resolve disputes—Plaintiff's cross-motion/opposition to FDA's motion for summary judgment, FDA's opposition to the cross-motion/reply, and Plaintiff's reply—remain. The Court should deny discovery and allow the summary judgment briefing schedule to proceed.[11]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion and allow the summary judgment briefing schedule to proceed.

Dated: August 15, 2022

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ T. Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, D.C. 20530
(202) 252-7558
tony.quinn2@usdoj.gov

*Counsel for Defendant*

---

[10]    Plaintiff's arguments in this section about why it has satisfied Rule 56(d) primarily cite to a declaration authored by Plaintiff's own counsel.  *See* ECF No. 10-1 at 27.

[11]    Should the Court determine that summary judgment is not appropriate after Plaintiff files an opposition to FDA's motion for summary judgment, the Court will at the juncture be better-positioned to determine the appropriate form that any additional factfinding should take.

Of Counsel:

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Acting Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 273-4477
danli.song@fda.hhs.gov