UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VANDA PHARMACEUTICALS, INC., | |
| *Plaintiff*, | |
| v. | Civ. A. No. 22-0938 (CRC) |
| FOOD AND DRUG ADMINISTRATION, | |
| *Defendant*. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...........................................................................................................................2

    FDA Properly Withheld the Clinical and Statistical Reviews under the Deliberative
    Process Privilege ………………………………………………………………… 2

    I.       The Reviews Are Predecisional...........................................................................2

           A. The Complete Response Letter Is Not a Final Decision ................................3

           B. The Complete Response Letter Does Not Incorporate the Reviews .................7

    II.  The Reviews Are Deliberative ………………………………………………....10

    III. FDA Reasonably Foresees That Disclosure of the Reviews Would Harm the
    Agency's Decisionmaking Process ………………………………………………...15

CONCLUSION.........................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
808 F.3d 895 (D.C. Cir. 2015) ............................................................................................16

*Afshar v. Dep't of State*,
702 F.2d 1125 (D.C. Cir. 1983) ..........................................................................................10

*Ancient Coin Collectors Guild v. Dep't of State*,
641 F.3d 504 (D.C. Cir. 2011) ............................................................................................13

*Boyd v. Crim. Div. of DOJ*,
475 F.3d 381 (D.C. Cir. 2007) ............................................................................................12

*Carter v. Dep't of Com.*,
307 F.3d 1084 (9th Cir. 2002) ............................................................................................14

*Center for Biological Diversity v. U.S. Marine Corps*,
Civ. A. No. 00-2387 (TFH), 2005 WL 3262901 (D.D.C. Sept. 19, 2005)..............................13

*Ctr. for Biological Diversity v. EPA*,
369 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................................12

*Ctr. for Biological Diversity v. Fish & Wildlife Serv.*,
Civ. A. No. 18-0342, 2021 WL 1209221 (D.D.C. Mar. 31, 2021)........................................12

*De Sousa v. CIA*,
239 F. Supp. 3d 179 (D.D.C. 2017) .................................................................................9, 10

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001)................................................................................................................19

*Emuwa v. Dep't of Homeland Sec.*,
Civ. A. No. 20-1756, 2021 WL 2255305 (D.D.C. June 3, 2021)...........................................17

*Emuwa v. Dep't of Homeland Sec.*,
Civ. A. No. 20-1756, 2022 WL 1451430 (D.D.C. May 9, 2022)...........................................16

*Fish & Wildlife Serv. v. Sierra Club*,
141 S. Ct. 777 (2021) ...........................................................................................................4

*Goodrich Corp. v. EPA*,
593 F. Supp. 2d 184 (D.D.C. 2009) .....................................................................................13

*Heartland All. for Hum. Needs & Hum. Rts. v. Dep't of Homeland Sec.*,
291 F. Supp. 3d 69 (D.D.C. 2018) .......................................................................................13

*Ibrahim v. Department of State*,
311 F. Supp. 3d 134 (D.D.C. 2018) ......................................................................................9

*Jud. Watch, Inc. v. Dep't of Def.*,
847 F.3d 735 (D.C. Cir. 2017)..............................................................................................10

*Ludlam v. U.S. Peace Corps*,
934 F. Supp. 2d 174 (D.D.C. 2013) .......................................................................................7

*Machado Amadis v. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ....................................................................... 11, 17, 18, 19

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)........................................................................................................9, 19

*Nostrum Pharmaceuticals, LLC v. FDA*,
35 F.4th 820 (D.C. Cir. 2022)...........................................................................................5, 6

*Parke, Davis & Co. v. Califano*,
  623 F.2d 1 (6th Cir. 1980) ..................................................................................... 14
*Pub. Emps. for Env't Resp. ("PEER") v. EPA*,
  Civ. A. No. 18-2219, 2021 WL 2515007 (D.D.C. June 18, 2021) ............................. 12, 17, 19
*Reinhard v. Dep't of Homeland Sec.*,
  Civ. A. No. 18-1449, 2019 WL 3037827 (D.D.C. July 11, 2019) .............................. 9
*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168, 189–90 (1975) ................................................................................... 4
*Reps. Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ................................................................................. 7, 17
*Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ........................................................................... 8
*Sterling Drug Inc. v. Harris*,
  488 F. Supp. 1019 (S.D.N.Y. 1980) ......................................................................... 14
*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................................... 12
*Vaughn v. Rosen*,
  523 F.2d 1136 (D.C. Cir. 1975)) ............................................................................. 7
*Weinstein v. Department of Health & Human Services*,
  977 F. Supp. 41 (D.D.C. 1993) ............................................................................... 16

**Statutes**
5 U.S.C. § 552(b)(5) ................................................................................................. 1

**Regulations**
21 C.F.R. § 20.21(a) ................................................................................................. 22
21 C.F.R. § 314.110(b)(3) ......................................................................................... 4
21 C.F.R. § 314.110(c) ............................................................................................. 4
21 C.F.R. §§ 20.61(c) ............................................................................................... 22

Defendant, the U.S. Food and Drug Administration ("FDA"), by and through undersigned counsel, respectfully submits this opposition to the cross-motion for summary judgment (ECF No. 16, hereafter, "Vanda's Motion") filed by Vanda Pharmaceuticals, Inc. ("Vanda" or "Plaintiff"). Unless explicitly stated, FDA does not concede any arguments in Plaintiff's Motion and maintains all previous statements in FDA's motion for summary judgment and accompanying attachments (ECF No. 8, hereafter, "FDA's Motion") and in FDA's opposition to Plaintiff's motion for discovery (ECF No. 12).

## PRELIMINARY STATEMENT

The sole question here is whether, under Exemption 5 of the Freedom of Information Act ("FOIA") (5 U.S.C. § 552(b)(5)), FDA properly withheld two portions of a Multi-Discipline Review document—the clinical and statistical reviews (the "Reviews") of Plaintiff's pending Supplemental New Drug Application ("sNDA" or "supplement"). It did. As supported by FDA's Motion, the Reviews are protected from disclosure under the deliberative process privilege because they are both pre-decisional and deliberative, and it is reasonably foreseeable that their disclosure would cause harm to FDA's sNDA decisionmaking process. Vanda's Motion does not undermine that argument, and its voluminous body of attachments largely obfuscate the narrow issue at hand.

Vanda argues that the Reviews are not pre-decisional because the Complete Response Letter ("CRL" or "Letter") issued after their drafting constitutes a final decision and the Reviews are incorporated into the Complete Response Letter. But the history behind FDA's regulation governing Complete Response Letters, FDA's interactions with Vanda regarding this sNDA, and case law in this Circuit confirm that the Complete Response Letter is not a final decision and even if it were, it does not incorporate the Reviews.

Vanda also argues that the Reviews are not deliberative because they consist largely or entirely of segregable factual material and are disclosed in other contexts. But case law in this

Circuit shows that reviewer evaluations of factual submissions from Vanda are deliberative and inextricably intertwined with the submissions they evaluate.

Finally, Vanda argues that the release of the Reviews for a pending sNDA would not harm an interest protected by the deliberative process privilege and would further government transparency.[1]  FDA recognizes the importance of agency transparency and endeavors to make the drug approval process understandable for sponsors and the public.  Indeed, as Vanda recognizes (Vanda's Mot. at 15, 23), FDA publishes general guidance about drug applications and publishes reviews of specific applications in certain contexts.  But mandating that FDA publish reviews in all contexts would upend the balance that FOIA seeks between the benefits of transparency and the importance of protecting FDA staff's internal deliberations.

Accordingly, based on the arguments in FDA's Motion and below, this Court should grant FDA's motion for summary judgment and deny Vanda's cross-motion.

## ARGUMENT

### I.     FDA Properly Withheld the Clinical and Statistical Reviews under the Deliberative Process Privilege

FDA properly withheld the Reviews from disclosure because: (1) they are predecisional; (2) they are deliberative; and (3) FDA reasonably foresees that their disclosure would harm an interest protected by Exemption 5.  As explained below, Vanda's arguments to the contrary are unavailing.

#### A.     The Reviews Are Predecisional

The Reviews are predecisional because they were generated during FDA's decisionmaking process regarding Vanda's sNDA. And they were generated before FDA's final decision, which

---

[1]     An amicus brief filed by Washington Legal Foundation also makes policy arguments about the importance of agency transparency.  *See* ECF No. 18 ("WLF Br.").

2

has not yet occurred, regarding whether the sNDA will receive approval.  *See* FDA's Mot. at 7–

10.  Instead, Vanda argues that the Reviews are not pre-decisional because the Complete Response

Letter constitutes a final decision, and the Reviews were incorporated into the Complete Response

Letter. Vanda's Mot. at 27–31.  Both contentions must be true for Vanda to prevail on this

argument,[2] and neither is.

### B.     The Complete Response Letter Is Not a Final Decision

First, the Complete Response Letter is not a final decision.  As explained in FDA's opening

brief, after the Reviews were drafted, FDA sent Plaintiff a Complete Response Letter dated August

16, 2019, which described deficiencies in Plaintiff's application and made recommendations to

address those deficiencies that would help put the application in a more favorable position for

approval.  FDA's Mot. at 3; *see also* Proposal to Refuse to Approve a New Drug Application

Supplement for Hetlioz (Tasimelteon); Opportunity for a Hearing, 87 Fed. Reg. 61,337, 61,338

(Oct. 11, 2022) ("Proposal to Refuse Approval"), found at:  https://www.federalregister.

gov/documents/2022/10/11/2022-21932/proposal-to-refuse-to-approve-a-new-drug-application-

supplement-for-hetlioz-tasimelteon-opportunity (last visited Dec. 20, 2022).

The Complete Response Letter stated that Vanda should conduct at least one additional

adequate and well-controlled study and encouraged Vanda to meet with FDA's Center for Drug

Evaluation and Research ("CDER" or "the Center") to discuss and reach agreement on the design

of a study that would address the deficiencies.  *Id.* at 61338–39.  Rather than revise its application

in accordance with the suggestions in the Complete Response Letter, Plaintiff continued to seek

approval of its sNDA through other means of engagement with FDA, including meeting with the

---

[2]      Vanda does not suggest that, independent of the Complete Response Letter, the Reviews
are also not predecisional.  Thus, Vanda's argument regarding the Reviews relies on both the
Letter's character and the Letter's incorporation of the Reviews.

sNDA Review Team, engaging in the Formal Dispute Resolution process, and requesting an opportunity for a hearing under 21 C.F.R. § 314.110(b)(3).  *Id.* (summarizing the history of interactions between the Center and Vanda regarding the sNDA).

Most recently, on October 11, 2022, FDA published a notice proposing to refuse to approve Vanda's sNDA and offering Vanda an opportunity to request a hearing on the matter.  *Id.*  Vanda submitted its request for a hearing on November 15, 2022.[3]  These proceedings show that FDA has not adopted a final agency decision regarding the sNDA and that the Complete Response Letter does not represent FDA's "final view on the matter."  *See* Vanda's Mot. at 28 (quoting *Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 786 (2021)).

The history behind FDA's regulation governing Complete Response Letters confirms that FDA views those Letters as "document[s] that leaves agency decisionmakers 'free to change their minds,'" *see Sierra Club*, 141 S. Ct. at 786 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 189–90, and n. 26 (1975)), and, indeed, a document aimed at assisting sponsors in doing so.  In 2008, FDA amended 21 C.F.R. § 314.110(c) to replace "approvable" and "not approvable" letters for New Drug Applications ("NDAs") and their supplements (as well as Abbreviated New Drug Applications ("ANDAs")) with one type of letter: the Complete Response Letter.  *See* Applications for Approval to Market a New Drug; Complete Response Letter; Amendments to Unapproved Applications, 73 Fed. Reg. 39,588 (July 10, 2008) (amending 21 C.F.R. § 314.110).[4]  Previously, FDA sent sponsors "approvable" letters for NDAs and sNDAs

---

[3]     *See* Request for Hearing from Vanda Pharmaceuticals Inc., found at:  https://www.regulati ons.gov/comment/FDA-2022-N-2390-0004 (last visited Dec. 20, 2022). Any public comments in support of the hearing were due December 12, 2022, and the hearing request remains pending.

[4]     This "Complete Response Letter Final Rule" may be found at: https://www.fda.gov/drugs/ laws-acts-and-rules/complete-response-letter-final-rule (last visited Dec. 20, 2022).

that were "basically approvable if certain issues are resolved" and indicated that the application "substantially meets requirements of part 314 and FDA can approve it if applicant submits additional information or agrees to specific conditions." *Id*. at 39590. FDA explained that issuance of Complete Response Letters would provide a "more consistent approach to informing sponsors of changes that must be made before an application can be approved, with no implication as to the ultimate approvability of the application." *Id*. at 39,589. FDA contemplated that a Complete Response Letter would cover a broad swath of situations, both where an NDA/sNDA was likely to be approved (because it had already substantially met the requirements for approval) and where it was likely to be denied. Thus, Section 314.110(c) reflects that, contrary to Vanda's argument, FDA did not intend for Complete Response Letters to represent its final, unchangeable view on the sponsor's application but instead an interim step allowing the agency to broadly communicate minor or major deficiencies in the application to the sponsor. *Id*.

Vanda claims that a Complete Response Letter must be a final decision because "in order to seek further review, a sponsor must file a 'resubmission'" that addresses deficiencies identified in the Complete Response Letter. Vanda's Mot. at 28. But as the history of Vanda's interactions with the Center about this application demonstrates, Vanda has already availed itself of several options to seek further review without resubmission. Moreover, an applicant's resubmission after a Complete Response Letter is substantively different from an applicant's original application because the resubmission's focus is on addressing the specific issues identified by the Center (CDER).

The D.C. Circuit recently confirmed the intermediary role of the Complete Response Letter in *Nostrum Pharmaceuticals, LLC v. FDA*, 35 F.4th 820, 825 (D.C. Cir. 2022). Vanda attempts to downplay *Nostrum*'s importance, arguing that it held only that the Complete Response Letter is

"not an 'order of the Secretary refusing . . . approval of an application.'" Vanda's Mot. at 28 (quoting *Nostrum*, 35 F.4th at 827). But the *Nostrum* holding plainly supports FDA's argument that the Complete Response Letter does not constitute the adoption of a final agency decision. To reach its holding that a Complete Response Letter is not a refusal to approve an application, the court analyzed the purpose of the Letter and its role in FDA's consideration of an application. *Nostrum*, 35 F.4th at 825–26. The court explained that a Complete Response Letter is meant to educate sponsors about changes that need to be made to place the application in a position for approval, and to provide an opportunity for sponsors to provide more information, but that it is not intended to imply what the agency's ultimate decision on the application will be. *Id.* The *Nostrum* court's analysis is squarely relevant to the predecisional issue here, which turns on the role of the Letter within the deliberative process.

Moreover, the holding in *Nostrum* should not be dismissed based on Vanda's misidentification of what constitutes the decision being deliberated here. As explained in FDA's Motion, the Reviews were prepared as part of FDA's decisionmaking process to determine whether Plaintiff's indication for jet lag disorder should be added to tasimelteon. FDA's Mot. at 10–11 (citing Farchione Decl.). Plaintiff attempts to reframe the relevant decision being deliberated as "whether to grant an application or issue a" Complete Response Letter. Vanda's Mot. at 28. Framing the decision of whether to issue a Complete Response Letter as simply binary obscures the fact that a Letter's issuance leads to several possible forks in the road on the way to a final decision (as noted above, that road could include Formal Dispute Resolution, resubmission, continued engagement in meetings between the sponsor and FDA, and/or a hearing).

Here, FDA's current proposal to refuse approval of Vanda's application and Vanda's pending request for a hearing (*see supra* at 4 n.2) undermine Vanda's argument that a Complete

Response Letter leaves Vanda no avenue for further review without a resubmission.  *See* Vanda's Mot. at 28.  And contrary to Vanda's argument that the Reviews were generated solely to inform the Complete Response Letter, *id.* at 29, the Reviews remain relevant as Vanda continues its engagement with FDA post-Letter, and as FDA continues to evaluate whether to approve Vanda's application.  Importantly, even if an applicant does not wish to avail itself of any of the post-Letter options for continued engagement with the agency, the applicant's decision to do nothing at that point or to withdraw its application does not render a Complete Response Letter a final agency decision.  *See, e.g., Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 367 (D.C. Cir. 2021) (noting that the deliberative process privilege can apply to proposals that "die on the vine" or "never see the light of day").

In arguing that FDA's classification of the deliberative process is "overbroad," Vanda relies on an inapposite 47-year-old case.  Vanda's Mot. at 28–29 (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1975)).  In *Vaughn*, the court found that a continuous process by which an agency evaluated and changed personnel policies, regulations, and standards was too "amorphous" to qualify as a "process" for purposes of the deliberative process privilege.  523 F.2d at 1143. *Vaughn*'s lack of a defined process bears little resemblance to FDA's consideration of an sNDA, which is a distinct process defined in detail by FDA's regulations and in numerous publicly-available guidance documents.[5]

### C.    The Complete Response Letter Does Not Incorporate the Reviews

Vanda's argument that the Reviews are not predecisional fails for the additional reason that

---

[5]     For the same reasons, Vanda's citation to *Ludlam v. U.S. Peace Corps*, 934 F. Supp. 2d 174, 189 (D.D.C. 2013), is unpersuasive.  *See* Vanda's Mot. at 29.  Unlike FDA's clearly defined drug approval process, the identified "process" in *Ludlam* was an agency's practice of ongoing, continuous appraisals and improvements of "all manner of agency activities" and was, like the process in *Vaughn*, too amorphous to set any limit on the deliberative process privilege.  *Ludlam*, 934 F. Supp. 2d at 189.

the Complete Response Letter does not incorporate the Reviews. *See* FDA's Mot. at 9–10 (explaining that under FDA regulations, the Complete Response Letter does not adopt or incorporate internal memoranda or communications and noting that the Letter's reference to other documents, but not the Reviews, makes clear when FDA is incorporating a document). Thus, even if the Complete Response Letter is a final decision (and FDA maintains it is not), Plaintiff has not shown that the Reviews, by virtue of incorporation into the Letter, are a final decision.

Plaintiff argues that even if the Reviews are predecisional and therefore do not constitute a final agency decision, they lose their predecisional status because they were incorporated into the Complete Response Letter (which Plaintiff argues is a final decision). *See* Vanda's Mot. at 29–30. As an initial matter, "[w]hereas the agency usually holds the burden to show why an exemption applies, the requester bears the burden to show why an otherwise predecisional and deliberative document has lost its privileged status through adoption." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 121 (D.D.C. 2021) (internal quotations omitted). Thus, Vanda is wrong that FDA bears the burden of proving that the Reviews were not incorporated by the Complete Response Letter (Vanda's Mot. at 31); Vanda bears the burden of proving incorporation here, and it has not met that burden.

The D.C. Circuit has clarified "when an agency's adoption of privileged material strips it of deliberative process protection." *Reps. Comm.*, 3 F.4th at 365. In *Reporters Committee*, the court explained that "[i]n this context, Exemption 5's aegis falls away only when an agency 'chooses expressly to adopt or incorporate by reference' the privileged information in its final decision." *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975)). The court held that the final agency action did not incorporate the documents at issue because it did not mention them, "much less expressly adopt their reasoning as its own." *Id.* Similarly, in *Ibrahim v.*

*Department of State*, 311 F. Supp. 3d 134 (D.D.C. 2018), the Court explained that the deliberative process privilege applied to an official assessment of a refugee application even after the related refugee application was denied in accordance with the assessment's recommendation because the denial of the application did not "'expressly . . . adopt or incorporate by reference'" the assessment's analysis. *Id.* at 142 (citation omitted).

Thus, courts in this Circuit have squarely rejected Plaintiff's contention that in FOIA's deliberative process context, documents that are an "integral component" of a decision necessarily become incorporated by the decision. *See* Vanda's Mot. at 30. Indeed, Vanda's contention would erode the difference between deliberative and decisional because deliberative documents are, by definition, important to an agency's final decision. *See, e.g. Reinhard v. Dep't of Homeland Sec.*, Civ. A. No. 18-1449, 2019 WL 3037827, at *7 (D.D.C. July 11, 2019) ("When final decisionmakers rely on others to condense a mass of available information into a summary or set of factual findings that the staff thinks important to the final decisionmaker, the deliberative-process privilege applies"). Documents that are part of the deliberative process are necessarily integral to and relied upon by the decision but are not expressly incorporated by virtue of that importance.

Plaintiff contends that an otherwise predecisional document can lose that status if an agency adopts that document as its position or uses it in dealings with the public. Vanda's Mot. at 29 (citing *De Sousa v. CIA*, 239 F. Supp. 3d 179, 201 (D.D.C. 2017)). But whether a document is adopted by a decision requires a fact-intensive examination of whether the decisionmaker expressly adopted the reasoning of the document (not just its conclusions) or held out the reasoning in the document as their own reasoning. *De Sousa*, 239 F. Supp. 3d at 202 (collecting cases). For instance, the D.C. Circuit held that a memorandum drafted by the Assistant Secretary of Defense

setting forth a recommendation for prisoner release (the predecisional document), and to which were attached draft letters to Congress to be signed by the Secretary of Defense, was not "adopted" by the Secretary by virtue of him signing the letters to Congress (the final decision). *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 740 (D.C. Cir. 2017). The D.C. Circuit held so even though the memorandum was in the same packet as the draft letters and recommended that the Secretary sign the letters, which the Secretary did. *Id*. at 738. The signed letters did not "adopt" the memorandum recommending signing because the Secretary did not sign the memorandum, hold the memorandum out to Congress as his reasoning, or otherwise endorse the memorandum. *Id*. "An agency employee cannot strip a memo of its predecisional character by silently 'carry[ing] out' the memo's recommended course of action." *Id*. at 739 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983)). Thus, a final decision's implicit reliance on a document or the import of the document to the decision is not enough to find adoption.

## II.    The Reviews Are Deliberative

Deliberative documents "reflect the give-and-take of the consultative process." *Jud. Watch,* 847 F.3d at 739. As explained in FDA's Motion and the Farchione Declaration, the Reviews are deliberative because they consist of staff opinions, recommendations, and evaluations of Vanda's study design and data that were prepared at the line-staff level to assist in the agency's deliberations regarding Vanda's application. FDA's Mot. at 10–12; Farchione Decl. ¶¶ 8, 11, 15–17. In contrast with the Complete Response Letter's focus on the next steps an applicant can take to address deficiencies, the Reviews gather analyses from staff of different disciplines to provide a comprehensive, multi-discipline forum of opinion. Farchione Decl. ¶¶ 15–18. The D.C. Circuit has stated that when documents reflect line staff's "evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking[,]" these recommendations "lie at the core of the deliberative-process privilege." *Machado Amadis v. Dep't*

*of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).  The Reviews fall squarely in that core.

Vanda does not dispute FDA's description of the role of the Reviews and how they are prepared by staff.  Instead, Vanda contends that the Reviews are not deliberative because they consist largely or entirely of segregable factual material, and release of this factual material would not expose FDA's deliberative process.  Vanda's Mot. at 22–23. Vanda is incorrect.

First, Vanda argues that reviewers' discussions and analyses of Vanda's study design and data submissions constitute factual material, attaching review template exhibits showing general headings like "methods" and "major safety results," in an attempt to demonstrate the factual underpinnings of these topics.  Vanda's Mot. at 26.  However, the mere inclusion of facts in the Reviews does not render the discussions and analyses of those submissions factual.  Nowhere does Vanda explain why a reviewer's discussion of facts—here, an application's methods or results— would not comprise the reviewer's subjective evaluations of those methods.

As explained in FDA's Motion, these Reviews constitute evaluations which are inextricably intertwined with Vanda's submitted data or scientific information being described, weighed, and analyzed.  FDA's Mot. at 11–12; Farchione Decl. ¶ 16.  As the supervisor of the Review Team tasked with evaluating Vanda's application, Dr. Farchione was responsible for reviewing the content of the Reviews and ensuring that all disciplines' comments were incorporated into the Multi-Discipline Review document.  Farchione Decl. ¶ 3.  Thus, Dr. Farchione is well-situated to opine on the interplay of reviewer evaluations and Vanda's submitted factual material cited in the Reviews.

Further, the D.C. Circuit has held that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citing *Boyd v. Crim. Div. of DOJ*, 475 F.3d

381, 391 (D.C. Cir. 2007)).  Similarly, this Court has repeatedly explained "decisionmaking that 'reflect[s] the collection, culling and assessment of factual information or scientific data' is of a kind that is clearly covered by the deliberative process privilege." *Ctr. for Biological Diversity v. Fish & Wildlife Serv.*, Civ. A. No. 18-0342, 2021 WL 1209221, at *7 (D.D.C. Mar. 31, 2021) (citing *Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 1, 20 (D.D.C. 2019) (collecting cases)).  For example, this Court found that an EPA formaldehyde assessment was deliberative because it comprised "scientific evaluation of extant formaldehyde studies to evaluate their methodological reliability, analysis of the evidence and findings of sound studies, and the synthesis and integration of such evidence and studies." *Pub. Emps. for Env't Resp. ("PEER") v. EPA*, Civ. A. No. 18-2219, 2021 WL 2515007, at *13 (D.D.C. June 18, 2021).  Like Vanda, the requestor argued that the agency's scientific assessment consisted of purely factual reports.  *Id*. at *12.  But this Court disagreed, distinguishing unevaluated factual reports (which are not protected as deliberative) from expert evaluations of scientific studies (which are).  *Id*.

Similar to the Farchione Declaration, EPA's declaration stated that "[f]actual information contained in the [formaldehyde assessment] cannot be reasonably segregated from the deliberative content" because "any purely factual information contained within the [formaldehyde assessment] is so thoroughly integrated with agency deliberations" that its disclosure would reveal the deliberative content.  *Id*. at *16.  This Court stated that "[s]uch 'inextricably intertwined' language of similar specificity to that expressed by EPA is routinely found to be sufficient for segregability purposes."  *Id*. (citations omitted); *see also Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) (holding that EPA properly withheld a model of groundwater flow because "even if the data plugged into the model is itself purely factual, the selection and calibration of data is part of the deliberative process to which Exemption 5 applies").  Likewise, the D.C. Circuit upheld

an agency's withholding of factual summaries culled from a larger universe of facts submitted to an agency where the summaries reflected "an exercise of judgement as to what issues are most relevant to the predecisional findings and recommendations."  *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011).

Vanda's reliance on cases from this Court about assessments involving straightforward data or simple factual accounts is misplaced given the detailed analyses and opinions contained in the Reviews.  First, Vanda notes (Vanda's Mot. at 24) that this Court held that factual information in statistical reports produced for DHS's "Secure Communities Statistical Monitoring" program was not deliberative.  *See Heartland All. for Hum. Needs & Hum. Rts. v. Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 80 (D.D.C. 2018).  But there, the agency publicly described the statistical reports as involving "fairly straightforward statistics."  *Id.*  And unlike this case, in which there is no publicly available information about the specific analyses performed on Vanda's sNDA, the agency published "in great detail[,]" among other things, multiple public memoranda explaining the exact metrics and calculations to be used for the specific reports about the Secure Communities program.  *Id.*  For these reasons, this Court found that the reports containing completed metrics involved no individual judgments or decisionmaking.  *Id.*

Second, Vanda cites *Center for Biological Diversity v. U.S. Marine Corps*, Civ. A. No. 00-2387 (TFH), 2005 WL 3262901, at *1–2 (D.D.C. Sept. 19, 2005) (Vanda's Mot. at 24–25), in which this Court held that a compilation of data describing a military base and its habitat was not deliberative.  But there, this Court explained the document was "a plain account of factual information" rather than information meant to be advisory, reflect individual opinions, or

otherwise assist in decisionmaking, like the Reviews here.[6]

Vanda's citation (Vanda's Mot. at 25–26) to two 1980 cases (both outside this Circuit) in which drug application documents were not found to be deliberative is also misplaced, given the significant changes in FDA's drug approval guidance, FDA's drug application requirements and review procedures, and FOIA caselaw since then. *See Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6–7 (6th Cir. 1980) (finding that it was unclear how 17 application documents at issue fit into the deliberative process because FDA did not have any guidance setting forth its drug approval procedures); *Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1024 (S.D.N.Y. 1980) (holding that documents reviewing the efficacy of a drug already approved for safety in 1952 did not fall under the "executive privilege").  As Vanda acknowledges (Vanda Mot. at 26–27), FDA's website in 2022 (42 years after these cases were decided) provides ample information about the drug application process and related procedures.

Finally, Vanda argues that disclosure of the factual information in the Reviews would not expose their deliberative process because FDA's drug approval process is publicly outlined and templates for reviews are publicly available.  Vanda's Mot. at 26–27.  But public information about the general review process does not reveal the specific deliberative review process here—that is, knowing that a review template has a heading for "methodology" exposes little about what an individual reviewer discussed regarding a specific application's methodology.

---

[6]     For the same reasons, Vanda's reliance on other cases (Vanda's Mot. at 24) that held purely statistical/data-driven documents were not deliberative is unpersuasive.  *See, e.g., Carter v. Dep't of Com.*, 307 F.3d 1084, 1091 (9th Cir. 2002) (holding that adjusted numbers (census figures) alone that revealed nothing about the process used to produce those numbers were not deliberative).

**III.     FDA Reasonably Foresees That Disclosure of the Reviews Would Harm the Agency's Decisionmaking Process**

Finally, FDA reasonably foresees that disclosure of the Reviews would harm the agency's decisionmaking process regarding Vanda's pending sNDA.  The policy interests underlying the deliberative process privilege include encouraging open discussions on policy matters between subordinates and superiors, protecting against premature disclosure of proposed policies before final adoption, and preventing public confusion that could result from premature disclosure. FDA's Mot. at 4.  The privilege seeks to balance the public's interest in transparency with the agency's desire protect its deliberative process.  Accordingly, FDA does not publish reviews unless and until a drug application is approved, and even then, FDA only affirmatively publishes reviews for approved NDAs and provides reviews for approved sNDAs in response to FOIA requests.  *Id.* at 13 (citing Philips Decl. ¶¶ 13–15).

Vanda argues (Vanda's Mot. at 15–17) that because FDA includes reviews of a drug application as part of the administrative record in an administrative challenge to the agency's substantive denial of an application, review staff should therefore draft every review with the expectation of public release.  However, when FDA publicly releases reviews, FDA does so for a reason that ultimately furthers the agency's public health mission and the processes that contribute to it, whether through defending a substantive final decision to deny an application or, when an application is approved, through communicating information to the public as part of a comprehensive package of information about the approval.  Just because FDA releases reviews in some contexts in furtherance of its agency responsibilities does not mean FDA must release reviews in all contexts or that its reviewers should expect to do so.

Vanda minimizes (Vanda's Mot. at 17) clinical and statistical reviews by describing them as standard boilerplate forms whose release would be of no moment to the agency.  But this

obscures the fact that their contents are necessarily tailored to the unique drug at issue and the indication(s) for which the applicant is requesting approval.  Even if reviews follow the same basic format, the release of a review for one drug says nothing about the foreseeable harm arising from releasing reviews for other drugs.  *See, e.g.*, *Emuwa v. Dep't of Homeland Sec.*, Civ. A. No. 20-1756, 2022 WL 1451430, at *3 (D.D.C. May 9, 2022) (rejecting Plaintiffs' argument that the agency has released the same type of assessment in other recent cases); *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 900 (D.C. Cir. 2015) ("An agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts.  Indeed, that kind of forfeiture rule would encourage agencies to voluntarily release fewer documents, a result in tension with FOIA's broad purposes") (citation omitted).

Vanda also misstates (Vanda's Mot. at 23) the necessary showing for finding a chilling effect and incorrectly states (Vanda's Mot. at 11–12) that FDA has not adequately demonstrated reasonably foreseeable harm through the Farchione Declaration.  Attempting to distinguish *Weinstein v. Department of Health & Human Services*, 977 F. Supp. 41 (D.D.C. 1993), in which summary evaluations of applications for research grants were held to be deliberative, Vanda asserts, without support, that this Court found the documents in *Weinstein* deliberative because their disclosure would "fundamentally alter the character" of the agency's deliberative process and consequently, that only those materials in the Reviews "whose release would alter a reviewer's calculus" should be protected by the privilege.  Vanda's Mot. at 23.  But to be deliberative, a document's disclosure need not "fundamentally alter" a process or a reviewer's calculus.  In *Weinstein*, this Court applied the deliberative process privilege because disclosure would "adversely affect" the decisionmaking process at issue.  977 F. Supp. at 44.

An agency can adequately show foreseeable harm in the context of the deliberative process privilege as long as its declarations "specifically focus[ ] on 'the information at issue' in the [records] under review" and "conclude[] that disclosure of that information 'would' chill future internal discussions." *Machado Amadis*, 971 F.3d at 371; *PEER,* 2021 WL 2515007, at *14 (holding that under *Machado Amadis*, no "further factual proffer by the agency" is needed to show foreseeable harm as long as the agency specifically focuses on the "information at issue" and concludes "disclosure of that information would chill future internal discussions"). Thus, to show harm, agencies must provide context regarding the specific deliberation at issue. *Machado Amadis*, 971 F.3d at 371 (stating that the agency's declaration was adequate because it identified the adjudication of administrative appeals as the specific deliberation at issue and stated that disclosure of the review forms would chill the candid line attorney discussions necessary for proper and efficient adjudication); *Reps. Comm.*, 3 F.4th at 372 (discussing *Machado Amadis* and the difference between a perfunctory statement and a statement that explains the sensitivity of a type of information or the role that information plays in a decisonmaking process); *Emuwa v. Dep't of Homeland Sec.*, Civ. A. No. 20-1756, 2021 WL 2255305, at *8 (D.D.C. June 3, 2021) (agency sufficiently showed reasonably foreseeable harm where the agency stated that the disclosure of asylum request assessments would chill frank discussions important to the evaluation of asylum requests because the assessments reflected officer recommendations and analyses rather than the agency's final decision).

In *Machado Amadis*, the Department of State, citing to an agency affidavit, explained that disclosure of the information at issue "would severely hamper the efficient day-to-day workings of the Administrative Appeals Staff attorneys, who would no longer feel free to candidly discuss their ideas, strategies, and recommendations" in the requested type of document. *Machado Amadis*

17

*v. Dep't of State*, No. 19-5088 (D.C. Cir.), Br. for Appellees at 40–41 (filed Oct. 22, 2019) (citing Jt. App'x at 272). The D.C. Circuit held that the agency "reasonably foresaw that disclosure would harm an interest protected by the deliberative-process privilege" based on the agency's conclusion to that effect, its description of the deliberative process, and the policy purpose behind the privilege, which is based on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery." *Machado Amadis*, 971 F.3d at 371.

Like the agencies involved in *Machado Amadis* and the other cases cited above, FDA has made an adequate showing of harm. FDA's chilling effect statement focuses on the specific information at issue (the staff evaluations and discussions in the Reviews), explains the importance of ensuring candid future deliberations among Center staff tasked with providing comments on complicated multi-disciplinary issues, and discusses the sensitivity of the information in the Reviews and the role they play within the context of the overall sNDA review process. FDA's Mot. at 13; Farchione Decl. ¶¶ 15–18. FDA explained that the Reviews contain detailed opinions and evaluations authored by staff from multiple scientific disciplines about whether the sNDA is supported by the data. FDA's Mot. at 13; Farchione Decl. ¶¶ 15–17. And FDA explained that protecting the exchange of these ideas is particularly important in the context of a pending sNDA on which the Center and Plaintiff continue to engage in discussions and feedback. FDA's Mot. at 13; Farchione Decl. ¶ 18. FDA also provided additional context for its differing stance on disclosure of reviews of approved drug applications versus reviews of unapproved drug applications, explaining the "particular sensitivity" of disclosing reviews of an unapproved sNDA. FDA's Mot. at 13; Farchione Decl. ¶ 19. For instance, FDA explained that publishing information about a drug in an unapproved sNDA implicates additional considerations because that drug would

be available on the market for a different approved use.  FDA's Mot. at 11–12; Farchione Decl. ¶ 19.

Plaintiff's assertion (Vanda's Mot. at 11–12) that FDA must provide a more concrete basis for Dr. Farchione's statement about how disclosure of the Reviews would chill the process of reviewing Vanda's sNDA lacks merit.  The chilling effect statement here falls squarely within the type of common-sense statements that the D.C. Circuit accepted in *Machado Amadis* because "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Machado Amadis*, 971 F.3d at 371 (ellipsis in original) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) and *Sears*, 421 U.S. at 150–51).  Arguing otherwise contradicts the "obvious realization" about human experience that led to the passage of the privilege.  *See Klamath*, 532 U.S. at 8.  Dr. Farchione made those statements based on her experience as a supervisor in the Center, familiarity with the sNDA review process and the Reviews at issue, and personal knowledge.  FDA's Mot. at 13; Farchione Decl. ¶ 3.  This basis satisfies the reasonably-foreseeable-harm standard, which does not require evidentiary proof beyond the assessment of agency officials positioned to opine on the question.  *See Machado Amadis*, 971 F.3d at 371.

Indeed, Vanda's exposition about why reviewers of their sNDA should expect their reviews to be published raises the fundamental concern at the heart of the privilege—that agency staff should be able to freely discuss difficult assessments without an ever-present expectation that all discussions should be worded in consideration of their publication.  *See PEER*, 2021 WL 2515007, at *15 (approving agency's explanation that "[i]f staff working on this Assessment or a similar assessment knew that all their edits and comments would someday be released . . . they would be

less likely to freely discuss . . . scientific analysis").

Vanda also states that FDA's public health concerns are unfounded because, among other things, Vanda's clinical trial data is publicly available and increasing the amount of publicly available information can only be helpful. Vanda's Mot. at 18–19.  Vanda also argues that consumers cannot access tasimelteon without a prescriber and that in any event, tasimelteon is a generally safe drug.  *Id.* at 19–20.  None of these arguments undermine FDA's public health concerns.

That Vanda has published its own clinical trial data does not undermine the sensitivity of publishing FDA's internal, detailed analyses of that data.  Contrary to Plaintiff's assertions, more information is not always better.  Increasing "the mix" of information (Vanda's Mot. at 18) does not necessarily assist consumers and healthcare professionals, particularly when the "mix" may confuse the public, may not include entire documents, and could include, for example, excerpts of documents out of context.  And while tasimelteon is an FDA-approved prescription drug for non-24-hour sleep wake disorder, its safety and efficacy for treating jet lag disorder has not yet been determined.

Vanda also states that "FDA's attempt to withhold the reviews is deeply unfair to regulated entities." Vanda's Mot. at 34.  Vanda argues that without the Reviews, it cannot determine why its sNDA has not yet been approved and cannot check FDA's math.  Vanda's Mot. at 31.  And Vanda contends that it would be "enormously inefficient" (Vanda's Mot. at 35) for entities like Vanda to pursue formal legal challenges to the substance of FDA's decision to "be able to review the reasons for the agency's decision" (Vanda's Mot. at 31).

FDA agrees that agency transparency is important and endeavors to make the drug approval process as transparent as possible for sponsors and the public without undermining its own staff

review processes—indeed, as previously discussed, FDA provides a significant amount of guidance about the drug approval process on the Center's website. *See, e.g.*, Guidance Documents for Drug Applications, found at: https://www.fda.gov/drugs/development-approval-process-drugs/guidance-documents-drug-applications (last visited Dec. 20, 2022). Moreover, FDA provides sponsors with numerous opportunities for communication with the Review Team about their drug applications, through letters, emails, phone calls, and meetings, so that a sponsor fully understands what the deficiencies in an application may be and how they may be addressed. *See* FDA's Mot. at 2–3; Farchione Decl. ¶¶ 7, 9–10 (explaining that the Review Team corresponds with the sponsor during the Team's review of the application about expectations for approval, any deficiencies, and changes that would allow for approval). Thus, by the time a Complete Response Letter is issued, a sponsor has had, and continues to have, many opportunities to communicate with FDA about application deficiencies. It is through these opportunities that the agency answers questions from the sponsor during an active review process, not through disclosing internal deliberations prepared to assist the agency.

Although the substance of the Complete Response Letter is not at issue here, it bears noting that the Letter identified deficiencies not easily subject to Vanda's claim that it needs to see the Reviews to "determine whether FDA got the math wrong." *See* Vanda's Mot. at 31. Among other things, the Complete Response Letter noted that the application's main studies used single doses of the drug, which did not demonstrate the effectiveness of repeat dosing as indicated by the proposed labeling, and that the application's main studies only focused on one jet lag-related symptom and one direction of travel. *See* Proposal to Refuse to Approve (describing the Letter). Given the transparency surrounding the process, Vanda cannot claim (Vanda's Mot. at 34) that it

is "deeply unfair" to withhold the Reviews and that it has no other way of understanding how to address the deficiencies.

As a final matter, Vanda makes a general policy argument (Vanda's Mot. at 31–35) that disclosure of the Reviews would further the purposes of FOIA and its goals of transparency. FDA's many opportunities for drug sponsors to engage with the agency and its publication of materials related to the drug approval process show that withholding the Reviews does not undermine the goals of transparency. Even if Plaintiff were to prevail in this litigation, FDA could lawfully release the Reviews only to Plaintiff because, as part of an unapproved sNDA, the Reviews contain Vanda's confidential commercial information that FDA may not release publicly under FOIA Exemption 4 and the agency's regulations. *See* 21 C.F.R. §§ 20.61(c) ("[d]ata and information submitted or divulged to the [FDA] which fall within the definitions of a trade secret or confidential commercial or financial information are not available for public disclosure"); *see also* 21 C.F.R. § 20.21(a) ("Any record of the [FDA] that is disclosed in an authorized manner to any member of the public is available for disclosure to all members of the public, except that: [d]ata and information subject to the exemptions established in § 20.61 for trade secrets and confidential commercial or financial information . . . shall be disclosed only to the persons for the protection of whom these exemptions exist"). As described above (*supra* at 19), the fact that Vanda could then make the Reviews (or portions of the Reviews) public raises public health considerations and does not further the agency's mission, especially given that these are highly technical documents which would be released to laypersons without additional context from FDA.

Thus, Vanda cannot plausibly claim that their receipt of the Reviews would further the interests of FOIA, public health, or any party but itself.[7]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant FDA's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

Dated: December 21, 2022

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ T. Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, D.C. 20530
(202) 252-7558
tony.quinn2@usdoj.gov

*Counsel for Defendant*

Of Counsel:

WENDY S. VICENTE
Deputy Chief Counsel for Litigation

---

[7]     The Washington Legal Foundation's brief does not advance Vanda's claim regarding the unfairness of withholding the Reviews and its inability make progress on the sNDA without them. In furtherance of the Foundation's general complaints about the federal government's abuses under FOIA, the Foundation's Brief parrots Vanda's contention that Vanda cannot understand the application deficiencies without the Reviews and repeats several of Vanda's arguments about why the deliberative process privilege does not apply. *See* WLF Br. at 11–13.  Moreover, the Foundation's brief offers no support for its contention that FDA's current drug approval mechanism does not provide the opportunity for drug sponsors to communicate complex questions to the Review Team.

DANLI SONG
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 273-4477
danli.song@fda.hhs.gov